UNITED STATES, Appellee,

v.

Private First Class Iris (NMN) PEREZ, SSN 584–13–3045, United States Army, Appellant.

CM 442162.

U. S. Army Court of Military Review.

19 Jan. 1983.

Captain William T. Wilson, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Captain David M. England, JAGC.

Captain Paul E. Jordan, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Patrick M. Flachs, JAGC.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

O'DONNELL, Senior Judge:

The appellant was convicted of negligent homicide, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976), and was sentenced to be reduced to the lowest enlisted grade. The convening authority approved the sentence. Under the provisions of Article 69 of the Code, 10 U.S.C. § 869 (1976), The Judge Advocate General directed that the case be reviewed by this Court pursuant to Article 66 of the Code, 10 U.S.C. § 866 (1976).

The deceased in this case was Ricardo Perez, the appellant's five-month old son. On 20 December 1980 and 2 January 1981, the appellant was assigned 24-hour duty at the unit's Air Defense Tactical Site. Each time, she left Ricardo with her boyfriend, Specialist Four Jose Cruz. (Cruz was not the father of the child.) On each occasion, the child suffered injuries requiring hospitalization—on 20 December, a fractured skull and on 2 January, two broken ribs, bruises on the back and excoriations on the back and face. The examining physician concluded that the latter injuries were consistent with the child's having been struck with exceptional force more than once and that they were not caused by a simple falling or other accidental means. The appellant and Cruz were counseled by the appellant's battalion commander, Lieutenant Colonel Robert Hardy. He informed the appellant that based on his examination of photographs of the child and on his conversations with the doctors, he believed that a "life-threatening" assault had taken place and that Cruz was responsible. Because of this, he directed that the child be placed in a foster home. Lieutenant Colonel Hardy concluded that the appellant did not believe him when he told her he was convinced Cruz was responsible for the injuries. At that time, the appellant stated that Cruz loved the baby and would not injure him and that the doctors were wrong.

The appellant was also counseled by Norman Deck and Mrs. Luella Hardin of the local Army Community Services office in January, after the second incident. They informed her that the injuries were life threatening and in their opinion were caused by Cruz. Cruz had previously told Mr. Deck that on the first occasion he accidentally bumped the child's head against a sink and that on the second occasion he had rolled over the child in his sleep. Mr. Deck informed both Cruz and the appellant that the doctors had concluded that the injuries were not consistent with Cruz's explanation. Even though the appellant stated that she did not believe that Cruz was responsible for the injuries, she agreed to place the child in a foster home. On Friday, 13 March, the appellant was permitted to take the child to her off-post quarters for the weekend. Both Mr. Deck and Mrs. Hardin told her that she must keep Cruz away from the baby. She agreed not to leave the child with Cruz but stated that Cruz would probably see the baby during this period. Mr. Deck asked the appellant what she would do if Cruz ever hurt the child again. The appellant replied that she would kill Cruz.

On the 15th of March, the appellant again was assigned duty. Contrary to her previous assurances, she left Ricardo with Cruz. From 1630 hours on 15 March until approximately 0430 hours on 16 March, Cruz was in sole custody of the child. During this time, Ricardo sustained the following injuries—massive intra-abdominal bleeding, laceration of the liver, acute subdural hemorrhage, contusions and abrasions of the scalp and numerous contusions of the abdominal wall, chest and back. The child was determined to be dead at 0430 hours as a result of massive abdominal bleeding.

Staff Sergeant Thomas E. Lamon, the appellant's superior, testified that he saw the appellant around lunchtime on 15 March. At that time, she expressed some concern about her child and stated, according to Sergeant Lamon, that "if something happened, it wouldn't be her fault because she was on duty."

Specialist Four Glen Christian, a co-worker of the appellant, testified that he and the appellant went to her off-post quarters around 1730 hours on 15 March to visit the

child. Cruz was with Ricardo and the child appeared to be alive at this time.

Sergeant First Class Wilson L. Walker, the appellant's platoon sergeant, testified that the appellant was not supposed to be on duty during the weekend of 13–16 March but that she was placed on duty by her new section chief, Sergeant Lamon, who was unaware of the circumstances. The appellant did not ask Sergeant Walker to be released from the 24-hour duty for that weekend. When Sergeant Walker reported for duty at 0515 hours on 16 March, he was informed that the child was dead. He called the appellant on the telephone and asked her where the child was. She replied that he was with another family named Delgado. She later told Sergeant Walker that Ricardo was with Cruz. Subsequently, she said that when she visited the baby earlier, she told Cruz to take him to the Delgado's.

■ Negligent homicide is the "unlawful killing of a person as the result of the failure to use due caution and circumspection in the circumstances." *United States v. Roman,* 1 U.S.C.M.A. 244, 254, 2 C.M.R. 150, 160 (1952). It is punishable under Article 134 of the Code as conduct of a nature to bring discredit upon the armed forces or as a disorder or neglect to the prejudice to good order and discipline in the armed forces. *United States v. Kirchner,* 1 U.S.C. M.A. 477, 4 C.M.R. 69 (1952).

■ As the mother of the child, the appellant was responsible for his welfare and safety, especially in view of his tender age. Having been informed that Cruz had inflicted serious bodily harm on Ricardo on two separate occasions, she did not exercise that due care expected of a reasonably prudent parent by placing him in Cruz's sole custody on the 15th of March. In short, she was negligent.

■ But that is not the end of the matter. For a person may be convicted of negligent homicide only if the negligence was a proximate cause of the death.

In deciding whether the appellant's negligence was a proximate cause in this case, we must first determine how the child died. Although there is no direct evidence of how Ricardo was injured on the night of 15–16 March, there is evidence of a circumstantial nature on the issue. The evidence establishes that the child was severely injured on two previous occasions while in Cruz's custody. The examining physician concluded that the injuries occurring on 2 January were consistent with an assault and inconsistent with an accident. Likewise, the fatal injuries occurred while the child was in Cruz's sole custody. From this, we conclude that Cruz inflicted the earlier injuries and that on the night of 15–16 March Cruz battered the child with sufficient severity to cause his death.

■ The fact that Cruz was immediately responsible for the child's death does not mean that the appellant's negligence was not the proximate cause of the death.

To be proximate, an act need not be the sole cause of death, nor must it be the immediate cause—the latest in time and space preceding the death. But a contributing cause is deemed proximate only if it plays a material role in the victim's decease.

*United States v. Romero,* 1 M.J. 227, 230 (C.M.A.1975). The essence of proximate cause is foreseeability.

It is not essential to the existence of a causal relationship that the ultimate harm which has resulted was foreseen or intended by the actor. It is sufficient that the ultimate harm is one which a reasonable man would foresee as being reasonably related to the acts of the defendant.

1 R. Anderson, *Wharton's Criminal Law and Procedure* § 68 (1957) (footnote omitted).

We hold that the appellant's negligence was a proximate cause of her son's death. Under the facts known to her concerning the previous injuries to Ricardo while in Cruz's custody, the death of the child was a natural and foreseeable consequence of her negligent act in permitting Ricardo to remain in the custody of Cruz on the fateful

night. This act played a material role in the child's death and thus was a proximate cause of the death. *See Palmer v. State,* 223 Md. 341, 164 A.2d 467 (1960), where a similar resolution was reached by the Maryland Court of Appeals. In that case, a child died as a result of repeated beatings by the mother's paramour. The court held that the mother's negligent failure to remove the child from that environment was a proximate cause of the death.

We are satisfied beyond a reasonable doubt of the appellant's guilt of negligent homicide. The findings of guilty and the sentence are affirmed.

Judge FOREMAN and Judge WERNER concur.