UNITED STATES, Appellee,

v.

Specialist Five Samuel F. GARGUS, 417–98–2685, United States Army, Appellant.

CM 447605.

U.S. Army Court of Military Review.

24 June 1986.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Major Eric T. Franzen, JAGC, Captain Annamary Sullivan, JAGC (on brief).

For Appellee: Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC, Captain Karen L. Taylor, JAGC (on brief).

Before WATKINS, LYMBURNER, and SMITH, Appellate Military Judges.

## MEMORANDUM OPINION

SMITH, Judge:

Appellant was tried by general court-martial, military judge alone, and, contrary to his pleas, was found guilty of larceny and negligent homicide in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 U.S.C.A. §§ 921, 934. He was sentenced to a bad-conduct discharge, confinement for six months, forfeiture of $500.00 pay per month for six months, and reduction to the grade of Private E–1. The convening authority approved the sentence.

On appeal, appellant contends that the evidence is insufficient as a matter of fact and law to support the findings of guilty of negligent homicide, and that a punitive discharge in this case is inappropriately severe. We agree.

On 31 December 1984, appellant approached Private First Class McConnell, a personal friend who worked in the post pharmacy, and requested that he obtain a bottle of halothane. Appellant's purpose in obtaining the halothane was to test it before he gave it to a "whore." Appellant believed that if the halothane was given to a "whore," she would "let you do anything to" her. Without authority, McConnell obtained the halothane from the pharmacy and gave it to appellant. Appellant took

the halothane to his barracks room, poured some of it onto cotton gauze, and inhaled it. He then put down the bottle of halothane and his roommate, Private (PVT) Stoner,[1] inhaled some. Stoner kept inhaling the halothane, and appellant left the room. A third person in the room observed Stoner inhaling the drug and engaged in some horseplay with him. A few minutes later appellant returned and noticed that PVT Stoner was on his bed and not breathing. It was subsequently determined that PVT Stoner had died from inhaling the halothane.

■ Negligent homicide is the unlawful killing of another which is the result of simple negligence. Paragraph 85c(1), Part IV, Manual for Courts-Martial, 1984; *United States v. Zukrigl*, 15 M.J. 798, 800 (A.C. M.R.), *pet. denied*, 17 M.J. 61 (C.M.A.1983). However, not every homicide caused by an act or omission is negligently caused so as to fall under criminal sanction. Criminal sanctions are imposed only if the person committing the act is under a duty to use due care, and the act itself exhibits a lack of that degree of care for the safety of others which a reasonably prudent man would have exercised under the circumstances. *See United States v. Mitchell*, 12 M.J. 1015, 1017 (A.C.M.R.), *pet. denied*, 14 M.J. 215 (C.M.A.1982).

■ It was stipulated at trial that the cause of PVT Stoner's death was cardiac arrhythmia (abnormal heart rhythm) induced by inhalation of halothane vapors, and that Stoner's blood had "a blood alcohol content of 0.16 (0.1 is considered legally impaired). Halothane and alcohol are both central nervous depressants. Use of alcohol with halothane could increase the possibility of halothane-induced cardiac arrhythmia." Stoner's body also contained cannabinoids (marijuana). It was further stipulated that (1) halothane is an inhalation anaesthetic used in the medical profession; (2) halothane is a nonscheduled, noncontrolled, nonrestricted substance; (3) halothane is a "legend medication," meaning that it is intended for prescription use; (4) a large number of legend medications are not dangerous and would not normally cause death; (5) bottles of halothane display no warning label or other symbol which would indicate any dangers associated with its use; (6) halothane is not commonly known as dangerous, even within the medical community; (7) the ordinary person would not know whether halothane is dangerous; and (8) pharmacy technicians receive no specific training that would cause them to believe there are any dangers associated with halothane.

Appellant was trained as a nuclear medical technician. It was stipulated that nuclear medical technicians are not trained regarding any drug except radioactive isotopes and that halothane is not used in nuclear medicine. The evidence adduced at trial demonstrated appellant knew that halothane was maintained in the pharmacy and suspected that it had some possible behavior-altering effects.

Heretofore, the imposition of criminal sanctions, in cases involving negligence and drug abuse, has been predicated upon the forseeability of misuse. *See United States v. Romero*, 1 M.J. 227 (C.M.A.1975). In this case, in light of the stipulated facts and evidence introduced at trial, we are not satisfied that the government has shown that an ordinary person would know, or that appellant knew, of halothane's potentially deadly effect—either alone or in conjunction with other drugs. Under the circumstances the Court finds that appellant's acts or omissions did not exhibit the requisite lack of care.

■ Appellant also maintains that the evidence is insufficient to support his conviction of larceny. We disagree.

The findings of guilty of Charge II and its Specification (negligent homicide) are set aside, and Charge II and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, only so much of the

1. Evidence at trial indicates that PVT Stoner was an experienced drug abuser.

sentence as provides for confinement for six months, forfeiture of $500.00 pay per month for six months, and reduction to Private E–1 is approved.

Judge LYMBURNER concurs.

Senior Judge WATKINS took no part in the decision of this case.