832

UNITED STATES, Appellee,

v.

Sergeant First Class David A. ROB-
ERTSON, 369–46–6417, United
States Army, Appellant.

ACMR 8902851.

U.S. Army Court of Military Review.

7 Oct. 1991.

Reconsideration Denied Nov. 5, 1991.

For Appellant: Matthew R. McCrink,
David P. Perri, Captain Andrew G. Ooster-
baan, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla,
JAGC, Lieutenant Colonel Daniel J.
Dell'Orto, JAGC, Captain Randy V. Cargill,
JAGC (on brief).

Before NAUGHTON, HOWELL and
JOHNSTON, Appellate Military Judges.

OPINION OF THE COURT

HOWELL, Judge.

Contrary to his pleas, the appellant was
convicted by a general court-martial con-
sisting of officers and enlisted members of
involuntary manslaughter and indecent
acts with a child under the age of sixteen
years, in violation of Articles 119 and 134,
Uniform Code of Military Justice, 10 U.S.C.
§§ 919 and 934 (1982), respectively. His
adjudged sentence included a bad-conduct
discharge, confinement for one year, and
reduction to the grade of Private E1. The
convening authority approved the sentence.

Through counsel, the appellant has asserted several issues. We will address only those dealing with the sufficiency of the evidence.

The standard for this court's review for legal and factual sufficiency of the evidence is well settled:

> The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt.

*United States v. Turner,* 25 M.J. 324, 324–25 (C.M.A.1987); *United States v. King,* 32 M.J. 558, 562 (A.C.M.R.1991).

With respect to the charge of indecent acts with a child, the evidence established that the appellant gave his fourteen-year-old stepdaughter, at her request, a vibrator with simulations of the male penis and "motion lotion" for use with the device. The appellant contends that the mere act of giving the vibrator to the stepdaughter, unaccompanied by the requisite intent to arouse his sexual passions, those of the child, or both, causes this conviction to fail for lack of sufficient proof. Though many parents would condemn the appellant's actions as a serious error in judgment, we agree that the evidence fails to establish the required criminal intent by proof of behavior or language which accompanied the alleged indecent act. *See United States v. Orben,* 28 M.J. 172 (C.M.A.1989), *cert. denied,* 493 U.S. 854, 110 S.Ct. 157, 107 L.Ed.2d 115 (1989).

Turning to the charge of involuntary manslaughter, the evidence established that the appellant's fifteen-year-old son, Bradford Robertson, died at his mother's home in Kansas on 28 July 1988, as a result of cardiac failure due to self-induced starvation. At the time of his death Brad weighed only eighty pounds and was severely emaciated. He had just returned to Kansas on 27 July 1988, from a four-month visit with his father in New Jersey. The appellant's manslaughter conviction stemmed from his failure to provide proper medical and/or psychiatric care to Brad prior to his death.

Both prosecution and defense witnesses testified that Brad suffered from a major eating disorder, probably anorexia nervosa complicated by bulimia. Though the doctors in Kansas who examined the boy prior to his visit to his father never diagnosed him as anorexic, Brad's condition existed well before his arrival in New Jersey in early April 1988. However, the appellant received essentially no information from Brad's mother at the time of the boy's arrival to alert him to Brad's previous weight loss and erratic eating habits.

Within a few weeks after Brad arrived in New Jersey, the appellant became aware that the boy was losing weight. On about 17 April 1988 the appellant took Brad to the Fort Dix hospital emergency room after he suffered dizzy spells. Brad was referred to the Pediatrics Clinic and on 20 April 1988 he was examined by Lieutenant Colonel Grace E. Nadhiry, Chief of Pediatrics. Dr. Nadhiry testified that after her examination she discussed with the appellant and his son the possibility that Brad was anorexic. She remembered discussing the problems associated with anorexia, especially for a boy. Brad told her that he had been evaluated for anorexia by a psychiatrist in Kansas who concluded that he did not have the illness. Dr. Nadhiry stated that Brad's weight on 20 April was 122 pounds, still within the normal range for his age and height, and he appeared to be in good health. However, she was aware from some civilian medical records Brad provided her that he had undergone a previous forty-pound weight loss over several months. She told the appellant and Brad to schedule a follow-up appointment with her two to four weeks later. She stated that her plan was to evaluate Brad further at that time and review additional medical

records from Kansas which she expected to be provided.

The consultation with Dr. Nadhiry was the only medical examination Brad underwent concerning his eating problems and his weight loss while he was in New Jersey. The appellant testified that Brad had a strong "aversion to doctors." He recognized that Brad needed a doctor, but he perceived that any medical treatment would be unsuccessful unless Brad was receptive to it.

During the ensuing three-and-a-half months, Brad lost another forty pounds. The appellant, aware of his condition, attempted to schedule another appointment at the pediatric clinic about three weeks after Dr. Nadhiry's examination. He testified that Brad vehemently protested going back to the doctor, so the appellant acquiesced and never made another effort to take him back to a medical doctor. Instead, he enlisted the aid of his wife, several friends, and co-workers, who attempted to persuade Brad to eat properly. However, he apparently never talked to his former wife or the doctors in Kansas to get additional information about his son's condition, nor did he attempt to obtain any medical records from Kansas. When the director of the Sylvan Learning Center, where Brad temporarily enrolled, expressed concern to the appellant about Brad's worsening condition, appellant told her that everything was being done that could be done. Finally, about ten days before Brad returned to Kansas, the appellant testified that he talked strongly to Brad, telling him that he either had to go to a doctor or "get ahold of an undertaker ... and make your own funeral arrangements...." Shortly thereafter, Brad made plans to return to Kansas for his brother's birthday and to see one of the doctors who had treated him previously.

Dr. Neil Satin, a psychiatrist and expert on eating disorders, testified as a defense witness about the causes, treatment, and symptoms of anorexia and bulimia. He stated that approximately twenty percent of those who suffer from anorexia or bulimia will die from the disease regardless of treatment. Dr. Satin indicated that it is possible for anorexics to hide weight loss, and they commonly do so. Dr. Satin stated that he reviewed Brad's medical records and, based on that review, concluded that Brad became anorexic in 1986 after he suffered from "viral gastroenteritis." Brad discovered then that "if you throw up and if you don't eat, your weight goes down ... [and] people tell you that you look better." Brad then continued to vomit to lose weight and as his weight dropped and the vomiting continued Brad's potassium level dropped. Ultimately, this low potassium level led to fatal cardiac arrest. Asked what parents of anorexics should do, Dr. Satin responded "I don't think that in these instances, parents can do anything right or wrong because there isn't a clear answer of what is right or wrong." Dr. Satin opined that Brad "was on a suicide trip" and there "was a chance that with treatment we might've altered the course, but we can't guarantee that." On cross-examination, however, he conceded that anorexia is a treatable illness and agreed that "you can turn around an anorexic."

The appellant contends that the evidence supporting his conviction for involuntary manslaughter is deficient because it fails to establish culpable negligence and fails to establish that even if such negligence occurred, the negligence was the proximate cause of Brad's death.

We concur that there is insufficient evidence to support a finding of culpable negligence, and thus the manslaughter conviction cannot stand. However, viewing the evidence in the light most favorable to the prosecution, there is ample evidence to support a finding of negligent homicide. Art. 134, UCMJ. Finally, we are convinced factually of the appellant's guilt of negligent homicide beyond a reasonable doubt.

■ Before the appellant can be convicted of negligent homicide, this court must find that three critical interrelated elements existed. *See United States v. Gargus*, 22 M.J. 861 (A.C.M.R.1986); *United States v. Perez*, 15 M.J. 585 (A.C.M.R.1983). First, there must be a legal duty. There is no doubt here that the

appellant owed a special parental duty of care toward his son while Brad was in his custody. *See United States v. Perez,* 15 M.J. at 587; *Sacks v. Thomas Jefferson University Hospital,* 684 F.Supp. 858 (E.D.Pa.1988), *affirmed,* 862 F.2d 310 (3rd Cir.1988). It is generally recognized that a parent owes a legal duty to provide medical care to a minor unemancipated child in the parent's custody. *Id.*

Secondly, a negligent breach of that duty must be found. Appellant failed to obtain any medical treatment for Brad after his 20 April examination by Dr. Nadhiry. Did this failure amount to the simple negligence required to sustain a finding of negligent homicide? We believe that it did. The appellant was aware in April of Brad's deteriorating condition. He acknowledged that he knew in April that Brad needed medical attention. During the next three months he observed Brad's erratic eating habits and his steady weight loss. Dr. Nadhiry's discussion put the appellant on notice that Brad might be suffering from a major eating disorder. Under the circumstances, a reasonable parent would have or should have perceived the extreme risk to Brad's health if there was no immediate medical intervention to stabilize his condition. We are convinced that appellant clearly perceived that risk of harm, yet he took no forthright action to secure the medical care Brad urgently needed. Moreover, appellant had the means, capability, and ability to provide timely medical care and counselling for Brad. Instead, he disregarded this need and the risk, and instead deferred to the boy's objections to seeing a doctor.

Thirdly, proximate causation must exist between the appellant's negligent omission and his son's death. *United States v. Zukrigl,* 15 M.J. 798 (A.C.M.R.1983). We are satisfied that the causal connection did exist. The appellant's failure to resolutely intervene when Brad's condition was apparent to all those around him was a material factor in causing the boy's death. If the appellant had acted in a timely manner to secure proper medical attention, at the very least Brad's life might have been prolonged, perhaps long enough to permit his condition to be stabilized or reversed.

Certainly we do not mean to imply that the appellant is solely responsible for his son's death. *See United States v. Perez,* 15 M.J. at 587. Brad suffered from an insidious, long-term illness. The appellant was no expert in anorexia. But we are convinced that a parent of ordinary caution would have recognized the seriousness of this boy's condition and would have acted in time to prevent his death or at least to give the medical community a reasonable chance to reverse the situation. Under the circumstances of this case, the risk to Brad's health was so great that disregarding it as the appellant did, for a prolonged period, was an unacceptable deviation from a reasonable standard of conduct.

We have carefully examined the remaining assignments of error asserted by appellant and find them to be without merit.

The findings of guilty of the Additional Charge and its Specification are set aside and the Additional Charge is dismissed. Only so much of the finding of guilty of the Charge and its Specification as finds that the appellant unlawfully killed Bradford Robertson by negligently failing to provide proper medical care to the deceased between 20 April 1988 and 27 July 1988, which failure was the proximate cause of the unlawful death of Bradford Robertson on 28 July 1988, in violation of Article 134, Uniform Code of Military Justice, is affirmed.

■ Reassessing the sentence on the basis of the errors noted and the entire record, and applying the criteria of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), only so much of the sentence as provides for a reduction to the grade of E5 is affirmed.

Senior Judge NAUGHTON and Judge JOHNSTON concur.