UNITED STATES

v.

David W. GOODEN, 262 47 7994, Sergeant (E–5), U.S. Marine Corps.

NMCM 90 2329.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 1 March 1990.

Decided 28 May 1993.

LT Randall L. Chambers, JAGC, USNR, Appellate Defense Counsel.

LT Ralph G. Stiehm, JAGC, USNR, Appellate Government Counsel.

Before JONES, REED and LAWRENCE, JJ.

JONES, Senior Judge:

A general court-martial composed of officer and enlisted members convicted appellant contrary to his pleas of one specification of intentionally inflicting grievous bodily harm on a child under the age of 16 years in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. Sec. 928. The sentence to confinement for 18 months and reduction in rate to pay

grade E–1 was approved by the convening authority. Appellant's assigned errors[1] will be addressed in order.

## I. *Background*

Appellant was found guilty of assaulting his three-year old son, D, on diverse occasions. Medical evidence indicated that the child had been repeatedly beaten with an electrical cord, a belt, and a heavy belt buckle, resulting in several permanent scars and at least one wound in the form of a deep cut. When D was medically examined, he claimed to have been hit and kicked by appellant. After doctors examined the child, social workers, one from the local county and one from the naval hospital, questioned appellant to determine if the child should be released to appellant's custody. Appellant admitted to the social workers that he had hit the child with a belt and subsequently provided a written statement to a criminal investigator. At trial, the single defense witness, appellant's wife, exercised her fifth amendment right against self-incrimination and terminated her testimony when asked if she had ever hit the child.

## II. *Mistake of Fact Instruction*

■ Appellant asserts that the military judge should have given an instruction on the defense of mistake of fact. The duty of the judge to give *sua sponte* an instruction on an affirmative defense such as mistake of fact arises whenever some evidence is presented to which the fact finders might attach credit if they so desire. *United States v. Taylor*, 26 M.J. 127 (C.M.A.1988). The military judge's duty to give such an instruction, however, exists only when the

evidence reasonably raises the affirmative defense. *Taylor* at 129.

■ Appellant's explanation for his son's injuries was that he had struck the child with a belt out of frustration and as a means of punishing the child. His defense appeared to be, not that he injured the child by mistake, but that he was only punishing the child in what he believed to be an appropriate manner. There is no indication in any of appellant's statements (or other evidence admitted at trial), however, that appellant honestly believed that the force he used was not such as would cause extreme pain, disfigurement, or serious bodily injury.

■ Regardless of appellant's intent to appropriately punish his son, punishment is not a valid justification for the use of force on a child by a parent or guardian if the force is designed or known to cause a substantial risk of serious bodily injury. *United States v. Brown*, 26 M.J. 148, 150 (C.M.A.1988) (adopting the Model Penal Code (Sec. 3.08(1) (A.L.I.1985) test); *United States v. Robertson*, 36 M.J. 190 (C.M.A. 1992). The members were so instructed at appellant's trial. As the military judge stated, the issue for the members was the degree and manner of punishment, not whether appellant mistakenly believed that he was entitled to punish his child in the manner that he chose.

The crux of appellant's defense at trial was that he was justified in appropriately punishing his child and that he was not responsible for some of the child's injuries. There is no evidence that appellant mistakenly believed that the blows he adminis-

---

1. I. THE MILITARY JUDGE ERRED BY NOT, SUA SPONTE, GIVING AN INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF MISTAKE OF FACT BASED UPON THE EVIDENCE ADMITTED ON THE CHARGE AND SPECIFICATION.
II. THE MILITARY JUDGE ERRED BY INSTRUCTING THE MEMBERS THAT THEY COULD CONVICT APPELLANT UNDER AN AIDER AND ABETTOR THEORY WHEN THERE WAS NO EVIDENCE TO SUPPORT SUCH A THEORY.
III. THE MILITARY JUDGE ERRED BY ADMITTING APPELLANT'S STATEMENTS TO SUSAN DIXON AND LINDA JUSTICE WHEN

HE WAS NOT ADVISED OF HIS RIGHTS UNDER ARTICLE 31(b) OF THE UNIFORM CODE OF MILITARY JUSTICE.
IV. APPELLANT'S STATEMENT TO GUNNERY SERGEANT SCHLARB WAS DERIVATIVE OF THE INVOLUNTARY STATEMENT ELICITED FROM APPELLANT BY LINDA JUSTICE AND SUSAN DIXON AND SHOULD HAVE BEEN EXCLUDED.
V. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT INTENTIONALLY INFLICTED GRIEVOUS BODILY HARM UPON HIS MINOR SON.

tered did not, or would not, create a substantial risk of serious injury to the child. Thus, there was no basis for an instruction on the mistake of fact defense. *See also United States v. Peel*, 29 M.J. 235 (C.M.A. 1989).

### III. *Aider and Abettor Instruction*

▬▬ Appellant's second assignment of error claims prejudice as a result of the military judge's determination, over defense objection, to instruct the members that they could convict appellant under an aider and abettor theory of criminal liability. Such prejudice is obvious, appellant contends, because the possibility exists that by giving such an instruction the military judge allowed the members to convict appellant on a theory neither raised by the evidence nor urged by the government. As appellate defense counsel states, the general rule is that the military judge is required to instruct on a matter only when *some* evidence has been admitted which brings the matter in issue. Rule for Courts–Martial (R.C.M.) 920(e), Discussion. Absent sufficient evidence, an aider and abettor instruction might serve only to confuse the members. *United States v. Westmoreland*, 31 M.J. 160, 164 (C.M.A.1990). Where the government has not relied on an aiding and abetting theory, there is no occasion for the judge to instruct the members thereon. *United States v. Bretz*, 19 M.J. 224 (C.M.A.1985).

We have scrupulously read the record in light of the assigned error. We note the following:

(1) In his opening statement, defense counsel previewed the expected evidence: "Over a five-month period, the evidence will show that not only Sergeant Gooden, but his wife M became extremely frustrated with the child and finally resorted to using a belt to discipline the child." (R.131). Based on this assertion, the judge questioned defense counsel as to whether the evidence might require him to give an aiding and abetting instruction. Defense counsel concurred. (R.135).

(2) On direct examination, the county social worker was asked by trial counsel what appellant had said to her about the marks on his son. She replied, "He [appellant] stated that he had hit D with a belt out of frustration with him. He said that they had been having problems with D ever since he had come to live with them. He stated that he didn't feel he had left all of the marks on him." (R.159).

(3) When the government rested its case, defense counsel immediately opened its case with the statement: "Your Honor, it ain't over until the fat lady sings. We call [appellant's wife] to the stand, sir." (R.301).

(4) Defense counsel elicited from appellant's wife that she had been abused as a child by her stepfather. (R.302). She related that she had been beaten with an electrical cord and kicked when she was down on the floor (similar in part to the injuries suffered by D). (R.303). She alone supervised D and her natural daughter 12 hours a day while appellant worked, (R.304), and becoming frustrated, called appellant "constantly at work to cry and tell him what D was doing because—it was all new to [her]." (R.305). She was "very upset" about her stepson's disruptive behavior in the home, "[got] on her husband's case about D's lack of discipline," observed appellant impose punishment on D with a leather belt, but although she was at every punishment, never saw appellant use an electrical cord. (R.306–7). Her stepson's behavior became worse every time that he was disciplined; he was afraid of her, and didn't like her. (R.308). On cross-examination, she reaffirmed her testimony at the Article 32 investigation that her husband had hit D only on the legs and the "butt" with the leather belt, that he was not responsible for causing any injuries outside those areas, that some of D's injuries were present prior to their taking custody of him, and that the deep cut on the back of D's leg had not been present when they had given him up. (R.310–11).

(5) At this point, defense counsel interjected to request that the judge instruct the witness on the crime of perjury and of her right to remain silent. In evaluating the need for such a warning, the judge

questioned defense counsel as to the relevance of the wife's own abuse as a child. In response, defense counsel agreed with the judge's evaluation of the defense theory of the case—that injuries to D were done by the wife. (R.312).

(6) Defense counsel agreed with the military judge's assessment of the defense theory of the case that appellant's wife was responsible for some, if not all, of the injuries to the child. (R.330).

(7) The military judge asked both counsel of their views on the necessity for an instruction on aiding and abetting. The judge theorized that because the injuries to D would have taken a considerable amount of time to heal, appellant must have known of them, and by failing to take any action as he was required to do as a parent, he had encouraged his wife in the on-going beatings. (R.331).

(8) Defense counsel objected to the giving of an aiding and abetting instruction, but the military judge did not alter his view. He reasoned:

> Well, if the father after work comes home, sees the child, hits him with the belt, seeing the welts already on that child, that certainly can be interpreted as a—as an encouragement of the wife to continue beating the child in view of the fact that it would be impossible for that father to be in the house and not see those welts, and in view of the fact that many witnesses testified that at least five of those scars had to have created some bleeding, and that in fact on one of those occasions, the bleeding had to be fairly extensive. If the father was concerned about the welfare of the child and saw that and yet continued to beat the child, that is an act of encouragement as I see it and can be interpreted by the members as an active encouragement to the wife.... [M]y rationale in this case for providing the members with the instruction on aider and abetting, [is] because I believe that if an individual sees all those scars on the child and continues to beat the child with the mother present,

that's active encouragement of the mother to continue [beating]....

(R.341).

On the basis of the foregoing observations, we conclude that the military judge was correct in his resolve to give the instruction based on the evidence admitted at trial and the theory of the case espoused by counsel.

IV. *Article 31(b) Requirement*

■ Appellant objected to the use of admissions he made during an interview conducted by Linda Justice, a social worker with the local county government and Susan Dixon, a social worker at the naval hospital. The interview was requested and conducted by Justice, who was required to report her findings to county law enforcement agents, but not federal or military authorities. The purpose of the interview was to obtain appellant's authorization to have the child admitted to the hospital and to determine whether he should be returned to appellant or placed elsewhere. A command instruction required Dixon to report her findings to her command, state authorities, and military justice authorities. Neither Dixon nor Justice worked for law enforcement agencies, and neither of them reported their findings to agents of the Naval Investigative Service.

■ We find that Justice, who conducted the interview, was not a person acting as a knowing agent of a military unit nor was she subject to the Uniform Code of Military Justice. Military Rule of Evidence 305(b)(1). She therefore had no duty to inform appellant of his rights under Article 31(b), UCMJ, before interviewing him. Article 31(b) rights are only required when the questioning is pursuant to a law enforcement or disciplinary investigation. *United States v. Loukas*, 29 M.J. 385 (C.M.A.1990). Because Justice and Dixon did not conduct the interview in a law enforcement capacity, but were instead primarily concerned with the welfare of the child, Article 31(b) warnings were not required. *United States v. Moore*, 32 M.J. 56 (C.M.A.1991); *United States v. Moreno*, 31 M.J. 935 (A.C.M.R.1990).

### V. *Statement Given to Agent of Naval Investigative Service*

We find no merit in appellant's argument that his subsequent written statement to an agent of the Naval Investigative Service (NIS) constituted fruit of the poisonous tree as we have concluded that the earlier interview was not improper.

■ Even were the earlier statement made to the social workers found to be inadmissible for a failure to provide Article 31 rights in advance of questioning, we would agree with the military judge's conclusion that the circumstances surrounding appellant's statement to the NIS agent were sufficiently attenuated such that it could not be considered fruit of the poisonous tree. *Cf. United States v. Steward,* 31 M.J. 259 (C.M.A.1990).

The NIS agent advised appellant of his Article 31(b) rights although she gave no cleansing warning, as she was unaware of appellant's earlier interview with Justice and Dixon. Her interrogation of appellant took place 66 days after the initial interview of appellant by the social workers at the naval hospital. There is no evidence to suggest that the earlier interview led to the NIS agent's contacting appellant or that it played any role in appellant's decision to make his subsequent statement. Justice and Dixon never notified NIS of the results of their discussion with appellant, and in fact, NIS received reports concerning the abuse of the boy from several hospital officials which led them to contact appellant.

### VI. *Sufficiency of the Evidence*

Appellant's last assignment of error is that the evidence is insufficient to prove either that appellant intended to inflict grievous bodily harm or that the victim in fact suffered grievous bodily harm. Appellant points out that there were no fractured or dislocated bones, torn members, or damage to internal organs, and claims that injuries to D were not life-threatening. Appellate defense counsel asserts that appellant was just trying to discipline his son, never meaning to seriously harm the boy.

■ "[W]hether the injuries are sufficiently serious to constitute grievous bodily harm is a question of fact best left to the court members," *United States v. Haynes,* 29 M.J. 610 (A.C.M.R.1989) (citing *United States v. Spearman,* 48 C.M.R. 405, 407 (C.M.A.1974)). Yet appellant asks this court to exercise its "awesome, plenary, de novo power of review," *United States v. Cole,* 31 M.J. 270, 272 (C.M.A.1990), to substitute its judgment for that of the members on whether these injuries constituted grievous bodily harm. Our review of the evidence leads us to the same conclusion reached by the fact finders at this trial: we find that grievous bodily injury did occur in this case.

Deep cuts are included in the definition of grievous bodily harm to be found in the Manual for Courts–Martial (MCM), United States, 1984, para. 54c(4)(a)(iii). At trial a forensic pathologist testified that six cuts to the victim had left permanent scars, and that the one to the thigh had penetrated down to the muscle layer. The evidence indicates that the child's cuts might have required sutures had he been brought in for emergency treatment shortly after the injury, but that the wounds had healed by themselves by the time he was examined. There was also medical testimony that a kick to the abdomen of a 3–year old child, such as the kick the victim received here, was potentially life threatening, and resulted here in the victim's admittance to the hospital for observation. In sum, there is ample evidence to support the members' finding of grievous bodily harm.

■ Turning to the question of intent, MCM, para. 54c(4)(b)(ii) provides, "[s]pecific intent may be proved by circumstantial evidence. When grievous bodily harm has been inflicted by means of intentionally using force in a manner likely to achieve that result, it may be inferred that grievous bodily harm was intended." The members were free to draw this inference or reject it. Given the repeated nature of the abuse and the manner in which it was inflicted, we conclude, as did the members, that appellant intended to cause grievous harm by kicking the child in the stomach and repeatedly striking the child with a belt

and belt buckle with sufficient force to cause permanent scarring and at least one deep cut extending down to the muscle layer.

The findings and sentence, as approved on review below, are affirmed.

Judge REED concurs.

LAWRENCE, Judge (concurring):

Regarding the second assignment of error, I agree that giving an instruction on aiding and abetting was not error but for a different reason. Appellant, as a parent of D, had a legal duty to protect the health and welfare of his son and to obtain medical treatment for any significant injury to him. *See United States v. Robertson*, 33 M.J. 832 (A.C.M.R.1991). Evidence was admitted to suggest that appellant's wife M caused all or some of the injuries suffered by the child that were evident from the numerous scars on D's body. Appellant lived in the same house as M and D, and the evidence was such that a reasonable fact finder could conclude that appellant saw these scars and therefore had actual knowledge that D was being abused. Further, the evidence suggests that appellant intentionally took no effective action to prevent abuse that certainly caused substantial pain and from which serious injury was foreseeable, nor did he obtain medical attention for D. *See United States v. Valdez*, 35 M.J. 555 (A.C.M.R.1992) (discussing an instruction concerning a parent's "intentional refusal to act" resulting in the death of a child). Indeed, if appellant did not inflict the abuse himself, his failure to ensure the welfare and safety of his son is not only a gross breach of his parental duty, it is repugnant to any civilized standard of accountability in a parent.

The evidence indicates that the abuse continued over an extended period of time. Although some abuse may have occurred before appellant was aware of it, a reasonable fact-finder could conclude that significant abuse occurred after appellant had knowledge that it was taking place. Thus, appellant's inaction and indifference resulted in that additional abuse.

An instruction based on appellant's breach of his legal duty to act to protect D was therefore appropriate. In fact, the military judge gave an instruction on aiding and abetting that included the following language:

If the accused witnesses the commission of the crime and had a duty to interfere but did not because he wanted to protect or encourage the alleged perpetrator, then the accused is a principle and an aider and abettor.

Record at 370. This language relates to appellant's affirmative duty to act to protect D. *United States v. Ford*, 12 C.M.A. 31, 30 C.M.R. 31 (1960), provides some precedent for contending an accused's failure to perform a legal duty relating to an offense is some evidence from which a fact finder may infer that he encouraged the offense, as does *United States v. Valdez, supra.* There is no direct evidence of appellant's intent in forbearing to prevent further abuse or obtain medical treatment. If M was in fact the perpetrator of the abuse, a logical reason for appellant's protection is that he intended to prevent the discovery of the abuse, thereby protecting her. I conclude that on this basis the military judge did not abuse his discretion in deciding to give an instruction on aiding and abetting.

Trial defense counsel objected to any instruction on aiding and abetting. When the military judge overruled the objection, it was incumbent upon trial defense counsel to object to the specific language of the instruction or propose specific language if he thought the military judge's proposed instruction was legally incorrect. He did not do so, although he did submit a request for an instruction dealing with the degree of force a parent may use in disciplining a child based on *United States v. Brown*, 26 M.J. 148 (C.M.A.1988). Accordingly, the instruction on aiding and abetting is legally sufficient and correct absent plain error. I conclude that the instruction is not plainly erroneous.

Lastly, the evidence is overwhelming that appellant kicked the child in the stomach, beat him with a belt that had a buckle

on it, and struck him with an electrical cord. A pronounced scar indicating a significant wound that would have bled noticeably was undoubtedly appellant's handiwork. The child attributed his torture to his father. Thus, even if M contributed to D's inhuman treatment, there is irrefutable compelling evidence of appellant's guilt. Thus, assuming arguendo that giving the instruction was error, the error was certainly harmless.