174

UNITED STATES, Appellee,

v.

Anthony R. SHIELDS, Specialist Four
U.S. Army, Appellant.

No. 47,136.

SPCM 18197.

U.S. Court of Military Appeals.

July 1, 1985.

For Appellant: *Captain Robert W. Wiechering* (argued); *Colonel William G.*

*Eckhardt*; *Major Lawrence F. Klar, Captain Marcus C. McCarty* (on briefs).

For Appellee: *Captain Garreth E. Shaw* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Lieutenant Colonel Thomas M. Curtis* (on brief).

*Opinion*

COX, Judge:

Despite his pleas, the accused was convicted by a special court-martial of wrongfully destroying private property, assault with a means likely to produce grievous bodily harm, and wrongfully communicating a threat on two occasions, in violation of Articles 109, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 909, 928, and 934, respectively. The approved sentence extends to a bad-conduct discharge, confinement at hard labor for 6 months, and forfeiture of $367.00 per month for 6 months. The Court of Military Review affirmed in a short-form opinion.

We granted review of the following issue:

DID THE MILITARY JUDGE ERR TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY ALLOWING THE GOVERNMENT TO INTRODUCE EVIDENCE OF HIS REPUTATION AS A BULLY WHEN HE HAD NOT PLACED HIS CHARACTER FOR PEACEFULNESS INTO ISSUE?

Finding no errors, we affirm.[1]

The offenses charged in this case arose during an extended birthday party given by the accused for himself. Several times during the party, Shields and some of his friends engaged in pushing and shoving, and cutting the trousers of a barracks mate, Private Jeffrey Mooney. Three specifications of aggravated assault and one of robbery were among the charges brought against the accused. Possibly due to the varying states of intoxication of the participants, there were several conflicting stories of

1. The issue as stated can lead to only one conclusion. We treat only that part of it which

relates to *whether* the accused had placed his reputation for peacefulness into issue.

what occurred. In support of these allegations, the victim and others testified as to three separate assaults by the accused on the victim.

In response the accused and other witnesses testified that Mooney had become intoxicated and initiated the affrays, and they also implicated a Private Donald Cioffi, who had earlier testified for the Government, in some of the assaults on Mooney. Throughout, the accused pictured himself as trying to calm things down and maintain peaceful relations with Mooney and the others.[2] He denied threatening Mooney with a knife or cutting off his trousers. Without going into details it may be fairly said that the conflicting testimony indicates that the roles of aggressor and victim were exchanged at various times during the afternoon and evening between the accused, Mooney, and Cioffi.

In rebuttal, trial counsel called a witness to testify as to the accused's reputation in the barracks for "[b]eing a bully." Defense counsel objected and asked for a mistrial on the ground that the accused had not placed his character in evidence. The military judge, citing Mil.R.Evid. 608, overruled the objection.

The military judge viewed the issue as being "whether or not the testimony of the accused in this particular case ... [was] sufficient to raise it to the thresholds that the government ... [could] offer rebuttal testimony on character in the sense of the opinion of this witness as to the character of the accused." Defense counsel argued that "the only way ... [he could] put on character evidence as to peacefulness ... [was] by asking someone how long they ... [had] known the accused and what contact they ... [had] with him and if they ... [had] an opinion or if they ... [knew] his reputation." The military judge later explained:

But, for the fact of rebuttal, the government cannot rebut the character of the accused unless that has been placed in issue. My ruling wasn't just the accused's testimony that placed peacefulness in issue, but the character of the accused's testimony—that is his statements on the stand, his testimony as to what happened, what he intended to do and what he did, in fact, do. Although that does not fall into the area of opinion and reputation, my ruling [is] that the character for peacefulness could be raised through a means other than just character opinion.

The military judge based his ruling on Mil.R.Evid. 608(a).[3] However that rule limits attacks on credibility to evidence for truth and veracity. While the testimony here, if believed, would controvert the accused's professed trait of being a "peaceful person," it would appear to be more cogently directed, in the context of this case, toward showing "a pertinent trait of the character of the accused" under Mil.R. Evid. 404(a)(1).[4] That rule limits the intro-

---

**2.** The general tenor of the accused's testimony may be seen from these excerpts:

And my basic intention was to go up there and, you know, as a—as a peace making bond ....

... I asked Mooney, I said, "Look, now, are you okay? Is everything all right? Let's go on back downstairs and sit down and have a couple of drinks and get your head together a little bit." There again, he was belligerent and out of hand and pushed here and pushed there ....

... I said, "Look, let's go outside and get some fresh air. Let's talk about this. Let's get everything ironed out. I don't want no hard feelings or anything like that." ...

**3.** In pertinent part Mil.R.Evid. 608(a) provides: The credibility of a witness may be attacked or supported by evidence in the form of opin-

ion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

**4.** Mil.R.Evid. 404 provides in pertinent part:

(a) ... Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(1) *Character of the accused.* Evidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut the same; ....

duction of such evidence "by the prosecution to" rebuttal of such evidence offered by the accused.[5] Since the accused did not directly offer evidence of his character and reputation for peacefulness, the only rebuttable evidence of this trait could have come from his own descriptions of his motives and acts which could, inferentially *or* otherwise, be said to show that trait. The military judge characterized "the testimony of the accused ... to his peaceable character ..." as a basis for his ruling apparently in the belief that the accused had placed his character into evidence by his own assertions of his peaceful intentions.

We have held elsewhere that the defense must assume responsibility not only for the specific evidence it introduces but also for the reasonable inferences which may be drawn from such evidence. *See United States v. Strong*, 17 M.J. 263 (C.M.A.1984). The determination as to whether the defense "opened the door" is for the trial judge. In addition, under Mil.R.Evid. 403, the military judge is given wide discretion in balancing the probative value of evidence with its "danger of unfair prejudice." *See* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 176–77 (1981). Examination of the record of trial of this case illustrates the wisdom of leaving these matters to the sound discretion of the military judge. Our appellate review is properly addressed to whether an abuse of that discretion occurred. While we might have ruled otherwise had we been at the trial, we cannot say that, on the record before us, there was an abuse of discretion in admitting this testimony.

The decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER did not participate.

EVERETT, Chief Judge (concurring in the result):

A military judge must weigh the probative value of relevant evidence against such dangers as unfair prejudice, confusion, and delay. *See* Mil.R.Evid. 403. However, this balancing process is undertaken only with respect to evidence whose reception is not otherwise prohibited by the Military Rules of Evidence. Thus, the first question to be answered is whether the evidence of appellant's reputation as a "bully" was inadmissible under any of the other Rules.

Mil.R.Evid. 404 states in pertinent part:

(a) *Character evidence generally.* Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(1) *Character of the accused.* Evidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut the same;

(2) *Character of victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide or assault case to rebut evidence that the victim was an aggressor;

(3) *Character of witness.* Evidence of the character of a witness, as provided in Mil.R.Evid. 607, 608, and 609.

Therefore, if evidence of appellant's character trait as a "bully" was offered by the Government for the purpose of proving that he "acted in conformity therewith on" the date of the alleged assault, then it was inadmissible except to rebut evidence that

---

**5.** Both Mil.R.Evid. 404 and 608 give the option to the accused to initially introduce character evidence. *See* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 181–82 (1981). This is consistent with the long-standing practice under the common law which forbids the prosecution's introduction of evidence of the bad character of an accused unless and until the accused places his own good character into evidence. *See* 1A Wigmore, *Evidence*

§§ 55 and 57 (Tillers rev. 1983). This restriction is designed to prevent the conviction of an accused for a specific crime because he has the reputation for being a "bad man." *McCormick's Handbook of the Law of Evidence* 447 (E. Cleary 2d ed. 1972); *see also* Mil.R.Evid. 404(b). The premise is not that such evidence is irrelevant, but rather that, in the context of a jury trial, the danger of prejudice outweighs its probative value. *See* Mil.R.Evid. 403.

appellant was peaceable. From my reading of the defense evidence—including appellant's own testimony—I have been unable to identify anything which might be construed as evidence of good character as to peaceableness. To be sure, Shields asserted that he was not the aggressor on *this* occasion; but that falls far short of a claim that his character was peaceable.

I observe that, prior to the Government's introduction of evidence that Shields had a reputation as a "bully," evidence had been received that appellant's alleged victim, Private Jeffrey Mooney, would become belligerent and rowdy when he drank and that, when drinking, he had tried to start fights with appellant on prior occasions. To allow the defense to attack the alleged victim's character for peaceableness but simultaneously to preclude admission of government evidence that appellant also was a violent person seems one-sided and unfair. While a risk exists that the prosecution evidence will tend to prejudice the trier of fact, there is a countervailing risk that, if the evidence is not admitted, the factfinder will labor under a serious misconception.

An argument might be made that, after the defense has offered evidence of a victim's belligerent character, the evidence of the accused's· violent traits may be offered for the purpose of proving that, on this occasion, the victim did not act in accord with his traits of character—and not directly for the purpose of proving that the accused acted pursuant to his own character traits. This hypertechnical argument, though, still depends on the premise that the accused was behaving in his characteristic manner at the time of his encounter with the alleged victim. Thus, it cannot easily be reconciled with Mil.R.Evid. 404(a).

The primary reason to accept this argument would be the same as that which

underlies doctrines like "curative admissibility"* and "opening the door"—namely, to avoid prejudice to a party by allowing his adversary to create a misconception on the part of the factfinder. On that ground, I believe admission of this evidence can be supported.

However, even if admission of this evidence were error, appellant was not prejudiced thereby. The only testimony that Shields had the reputation of "[b]eing a bully" came from PFC John B. Haran, III—who was a friend and apparently a roommate of appellant's victim and had been drinking with him on the evening of the alleged assault. Character testimony from this single source probably would be given little weight by the factfinder, in view of the amount of other evidence in this case. Moreover, on the basis of the ruling that Haran's testimony was admissible, defense counsel later persuaded the military judge to receive evidence about the belligerency of Private Donald Cioffi—to whom the defense was seeking to transfer blame for the attacks on Private Mooney, the alleged victim. Thus, appellant benefited from defense evidence that would seem to be inadmissible under a literal reading of Mil.R.Evid. 404(a) but which was, nonetheless, received because of the judge's earlier ruling as to the evidence of appellant's belligerence.

To summarize, I conclude: (a) although appellant offered no evidence as to his own character for peacefulness, the defense introduction of evidence of the victim's violent character authorized the reception of evidence of appellant's reputation as a "bully" in order to avoid misleading the factfinder; and (b) even if this evidence of appellant's character should have been excluded, its admission was harmless error in light of the other evidence in this record of trial.

---

* *See generally* 1 Wigmore, *Evidence* § 15 (Tillers rev. 1983).