UNITED STATES, Appellee,

v.

Specialist Yvette M. McGHEE,
339–62–2602, United States
Army, Appellant.

ACMR 8800958.

U.S. Army Court of Military Review.

30 Nov. 1989.

For Appellant: Captain Harry C. Wallace, Jr., JAGC (argued), Captain Brian D. Bailey, JAGC (on brief).

For Appellee: Captain Martin D. Carpenter, JAGC (argued), Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC (on brief).

Before KANE, GILLEY and GIUNTINI, Appellate Military Judges.

OPINION OF THE COURT

GILLEY, Judge:

Contrary to her pleas, a general court-martial consisting of officers and enlisted members convicted the appellant of maiming and of unlawfully striking her son Anthony, unlawfully killing her daughter Shanta by involuntary manslaughter, and of unlawfully striking Shanta (two specifications). Those convictions were based on violations of Article 119, 124, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 919, 924, and 928 (1982) [hereinafter UCMJ]. The convening authority approved the sentence of a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant contends that the evidence is insufficient to sustain the convictions of maiming and involuntary manslaughter. We find that the evidence supports findings of guilt of assault with a means likely to inflict grievous bodily harm rather than maiming and involuntary manslaughter.

## I.

■ The conviction for maiming was based on the following facts. The appellant and her friend, Sergeant Hooker, serially beat Anthony, who was six, with a wire coat hanger, an electrical extension cord, and a leather belt. Some scars were left on Anthony's face and his body, especially his buttocks.

Article 124, UCMJ, provides that maiming can occur by an assault that "(1) seriously disfigures [the victims] person by any mutilation thereof." While the disfigurement required for maiming need not mutilate an entire member, or be of any particular type, it must "impair perceptibly and materially the victim's comeliness." Manual for Courts–Martial, United States, 1984, Part IV, paragraph 50c(1) [hereinafter M.C.M., 1984]. We have no military precedent for the meaning of "comeliness."

This explication of Article 124, UCMJ, has been in the Manual for Courts–Martial since 1951. M.C.M., 1951, paragraph 203. Regarding "comeliness," the Legal and Legislative Basis Manual for Courts–Martial, 1951, describes the scope of Article 124 as follows: "Article 124 looks only to maintaining the integrity of the person, the natural completeness and comeliness of the human members and organs, and the preservations of their functions." Legal and Legislative Basis Manual for Courts–Martial, United States, 1951, at 280, citing 36 Am.Jur. Mayhem § 4. The quoted language now appears in 53 Am.Jur.2d, Mayhem and Related Offenses § 3 at 490 (1970).

We find that to "impair perceptibly and materially the victim's comeliness" is a legally acceptable analogue for "disfigures his person by any mutilation thereof." The pertinent definition of "disfigure" is "to make less complete, perfect, or beautiful in appearance" and the pertinent definition of "mutilate" is "to cut up or alter radically so as to make imperfect." Webster's Third International Dictionary 649, 1492 (1981). The definition of "comeliness" is "the condition of being comely [having a pleasing appearance] esp[ecially] with respect to grace or beauty of external form." *Id.* at 454. Thus, the perceptible and material impairment of comeliness fits nicely with the pertinent Article 124, UCMJ, definition of maiming.

Upon our examination of the photographs and doctor's testimony in the record, we find the scars not easily detectable to the casual observer. Thus, the evidence fell beneath the threshold for maiming. That evidence, however, supports our finding of an assault with means likely to inflict grievous bodily harm, a violation of Article 128, UCMJ, 10 U.S.C. § 928 (1982).

## II.

■ Regarding Shanta's death, the appellant was on notice from her son, Anthony, that Sergeant Hooker had punched Shanta, age 5, in the stomach about two months before he punched her again. On the second occasion, her small intestine ruptured, leading to peritonitis and shock. She died within 24 hours.

Involuntary manslaughter occurs by culpable negligence that may be "a negligent act or omission which, when viewed in light of human experience, might foreseeably result in the death of another, even though death would not necessarily be a natural and probable consequence of the act or omission." M.C.M., 1984, Part IV, paragraph 44c(2)(a)(i). The Manual for Courts–Martial goes on to point out that involuntary manslaughter may occur by use of dangerous instrumentalities "without taking reasonable precautions to ascertain that [they] would not be dangerous." *Id.* But, the Manual speaks only of inherently dangerous items such as pistols, poisons, and dangerous drugs. We realize that the appellant was charged with a high degree of care in safeguarding her child of tender years from danger when leaving her in the care of another. She suspected child abuse for she knew Sergeant Hooker had scalded Shanta's hand. As distressing as this pattern of excessive physical discipline abuse is, we have a reasonable doubt that human death "might" foreseeably have resulted in view of ordinary human experience.

■ We have a further problem in assessing the court-martial's findings against

the Manual's standard for involuntary manslaughter because of the specification used in charging the offense. The specification alleged that the appellant was culpably negligent "by failing to protect her from the *physical abuse* of Sergeant Clay R. Hooker, a failure [the appellant] knew might foreseeably result in *life-threatening injury* to Shanta McGhee" (emphasis added). The standard for guilt established by that specification can reasonably be seen as less exacting than that prescribed by the manual. In the Manual, "death" had to be reasonably foreseeable. It should have been so charged. *See United States v. Henderson*, 23 M.J. 77 (C.M.A. 1986) (involuntary manslaughter by giving an overdose of cocaine was upheld).

In *United States v. Perez*, 15 M.J. 585 (A.C.M.R.1983), this court affirmed a conviction of negligent homicide by a mother who left her five-month-old child in the care of her boyfriend after he twice inflicted severe injuries on the infant that required hospitalization. The battalion commander had warned the child's mother, providing her his conclusion that the boyfriend was lying to her when he told her that the injuries occurred accidentally. In that case, we found that upon the facts known to her, the death of the child was a natural and foreseeable consequence of her negligent act in leaving the infant in the care of her boyfriend.

The case before us differs somewhat. Here, the five-year-old deceased had been at least twice abused by a boyfriend, and the appellant was on notice of that, but we have a reasonable doubt that the pattern of abuse portended death. In fact, the pattern of physical abuse went on for a long time without an apparent risk of death. The abysmal routine became normalcy for the couple.

On the other hand, the appellant recklessly failed in her high duty of care to foresee likely grievous bodily injuries from leaving her daughter with her boyfriend. Thus, we conclude that she is guilty of aggravated assault through her gross neglect in leaving her daughter with her boyfriend who was likely to inflict grievous bodily harm upon her daughter. *See*

M.C.M., 1984, Part IV, paragraph 54c(4)(a)(iii) (" '[g]rievous bodily harm' means serious bodily injury"). *Cf. United States v. Perez*, 15 M.J. 585 (A.C.M.R.1983) (negligent homicide by leaving baby with boyfriend who had caused serious injuries before). Her degree of culpability warrants our finding guilt of aggravated assault rather than merely negligent homicide. The difference in maximum punishments reflects our assessment of this case: a dishonorable discharge and confinement for three years for the aggravated assault and a bad-conduct discharge and confinement for one year for the negligent homicide.

Had the court-martial found the appellant guilty of the two aggravated assaults, as lesser included offenses, we are confident that it would have adjudged, and the convening authority would have approved, a sentence of at least a bad-conduct discharge, confinement for five years, total forfeitures, and reduction to Private E1.

We have considered the issues raised personally by the appellant and they are without merit.

The court affirms only so much of the findings of guilty of Additional Charge I and its Specification as find that the appellant did assault Shanta L. McGhee, constituting assault with a means likely to inflict grievous bodily harm, and only so much of the findings of guilty of Additional Charge II and its Specification as find that the appellant did assault Anthony McGhee, constituting an assault with a means likely to inflict grievous bodily harm. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction in grade to Private E1.

Senior Judge KANE and Judge GIUNTINI, concur.