UNITED STATES

v.

Joe N. OUTIN, Jr., 250 55 2211
Lance Corporal (E–3), U.S.
Marine Corps.

NMCM 94 00001.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 16 June 1993.

Decided 28 Feb. 1995.

LT Lisa H. MacPhee, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before MOLLISON, J., CLARK, Senior Judge, and DeCICCO, J.

CLARK, Judge:

Contrary to the appellant's pleas, a general court-martial panel of members convicted him of maiming his wife's eight-week old daughter by immersing her in a scalding liquid, in violation of Article 124, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 924. The appellant was sentenced to confinement for 1 year, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence.

The appellant's assignments of error[1] challenge his conviction, his sentence, and the impartiality of this court. We have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of appellant was committed.

## I.

### Background

The appellant began a relationship with YN3 Lisa Lockett while she was pregnant with a child fathered by a Mr. Daniel. The child, Shonta Yvonne Lockett, was born 7 July 1992. One month later, 8 August 1992, the appellant and YN3 Lockett were married. One month after their marriage, on 9 September 1992, YN3 Lockett returned to duty, starting the day by dropping off the appellant at his place of duty and dropping off Shonta at the home of the babysitter, Mrs. Sharon Smith.

At noon, YN3 Lockett picked up the appellant at his place of duty, drove him to their quarters, and returned to work. Between 2:15 p.m. and 2:40 p.m.[2] the appellant arrived at Mrs. Smith's house to pick up Shonta, who was seated in a "swinger" when he arrived. The appellant carried Shonta on his left shoulder, supporting her with his left hand pressing against her back, from Mrs. Smith's house to the mobile home he shared with Shonta and YN3 Lockett. The trip took about 2 minutes. About 2:45 p.m., after receiving a call from the appellant, YN3 Lockett drove to their quarters, picked up the appellant and Shonta and drove to the hospital, checking in at 3:15 p.m.

Shonta had immersion burns over 56 percent of her body. Twenty-one percent of these burns—her buttocks, back, shoulder girdle, and upper arms—were third degree, involving unhealing tissue destruction. Her arms and hands had second degree burns. Skin grafts were necessary for the third degree burns. The donor sites for the grafts as well as the sites of the burns will have permanent scarring. Record at 148.

Dr. Orlet, a plastic surgeon, testified that the burn pattern indicated that Shonta had been held by her feet while she was immersed in scalding water. She would have been in extreme pain, causing her to scream. Had she been burned prior to being placed in the swinger, she would not have tolerated sitting in the swinger. The skin would have peeled off and stuck to the clothing she was wearing. The burns would have been noticeable immediately. Record at 143–158.

Dr. McIntosh testified that Prosecution Exhibits 23 through 33 are photos of a child with immersion burns, probably from being immersed in hot liquid about three inches deep. Record at 162.

The appellant claimed he had noticed redness and peeling skin when he was preparing to bathe Shonta, after picking her up at Mrs. Smith's. He removed her diaper and one-piece sleeveless infant body suit and tried to cool her by wrapping her in a towel and dampening her back with a towel. He denied immersing her in scalding water and causing her injuries. Record at 227–290.

## II.

### Test For Sufficiency Of The Evidence

 Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires this Court to determine

---

1. I. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY OF MAIMING BEYOND A REASONABLE DOUBT.

 II. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY OF THE DISFIGUREMENT ELEMENT OF MAIMING BEYOND A REASONABLE DOUBT.

 III. THE MILITARY JUDGE ERRED BY OVERRULING THE DEFENSE COUNSEL'S OBJECTION TO THE RELEVANCE OF APPELLANT'S HITTING A WALL WITH HIS ELBOW AND ALLEGEDLY KICKING HIS WIFE TO SHOW PROPENSITY TO BE VIOLENT TOWARDS THE BABY SHONTA, PREJUDICING APPELLANT BY PROVIDING THE ONLY CON-

CRETE EVIDENCE TO SHOW AN INTENT TO MAIM.

 IV. APPELLANT'S SENTENCE TO A DISHONORABLE DISCHARGE IS UNDULY HARSH.

 V. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF NAVY-MARINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS VIOLATES APPELLANT'S RIGHT TO AN IMPARTIAL JUDICIAL FORUM.

2. Mrs. Smith testified that the appellant arrived at her house at 2:18 P.M.; the appellant testified that he arrived at 2:35 P.M.

not only the legal sufficiency of the evidence, but also its factual sufficiency. The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). Applying this test we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A.1991), *quoted in United States v. McGinty,* 38 M.J. 131, 132 (C.M.A.1993). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the accused's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. We are convinced beyond a reasonable doubt of the appellant's guilt, legally and factually.

### III.

### Proof Beyond Reasonable Doubt
*Appellant Inflicted The Injuries*

■ During the time immediately before Shonta sustained the injuries, only two persons physically capable of causing such injuries had access to her: the babysitter and the appellant. If the babysitter had inflicted the injuries, the burns would have been immediately visible to the appellant when he arrived to pick up Shonta. Record at 147, 154, 155, 162, 173. Shonta would not have tolerated, without screaming, sitting in the swinger or being carried with the appellant's hand pressing against her burned back. Record at 148, 172. Her skin would have sloughed off and adhered to the clothing she was wearing. Record at 147, 162, 163, 166. Instead, the appellant noticed no burns when he picked up Shonta. She did not scream while seated in the swinger or while she was carried by the appellant. There was no skin adhered to the clothing she wore despite the fact that she "was shedding dead burned skin, like a Christmas tree sheds needles in January." Record at 71, 173; Prosecution Exhibit 34. The only reasonable conclusion is that Shonta was scalded by the appellant

after he took her home and removed her clothing.

### *Appellant Inflicted The Injuries Intentionally*

■ To be guilty of maiming, the appellant must have had an intent to injure, disfigure, or disable Shonta at the time he inflicted the burns. Manual for Courts–Martial, 1984 [MCM], Part IV, ¶ 50a. Evidence of intent may be gleaned from the circumstances. Rule for Courts–Martial [R.C.M.] 918(c). The military judge instructed the members that they must be convinced beyond a reasonable doubt that the appellant had such an intent when he scalded Shonta. Record at 336, 337.

■ The burn patterns indicate that Shonta was immersed in a hot liquid by the appellant holding her feet, thereby sparing his hands the scalding temperatures to which he was subjecting her body. The fact that his hands were not immersed in the liquid permits the inference that he knew that immersion in the scalding liquid would cause injuries. His having immersed Shonta in the scalding liquid in the manner that he did, knowing that it would cause injuries, permits the inference that he intended to injure her. These are the circumstances from which the members could reasonably infer that the appellant intended to injure Shonta when he immersed her in the scalding water.

The military judge properly instructed the members on the application of circumstantial evidence to determine intent. Record at 338. We are confident that the members followed this instruction in deciding the appellant's intent. We are, ourselves, satisfied beyond reasonable doubt that the appellant intended to injure Shonta.

### *The Injuries Caused Disfigurement*

■ A person subject to the Uniform Code of Military Justice who, with intent to injure, causes an injury to another person which seriously disfigures that person is guilty of maiming. UCMJ, Article 124; MCM, Part IV, ¶ 50. Although the disfigurement must be a serious injury of a **substantially** permanent nature, it need not be per-

manent for the offense to be complete. MCM, Part IV, ¶ 50c(1).

 The members heard two expert witnesses testify that the burn scars on Shonta were permanent. Record at 148, 160. The members also had access to photographs graphically depicting the injuries to Shonta. Prosecution Exhibits 23–33. The military judge instructed the members on consideration of the expert testimony (Record at 337) and on the element of disfigurement which they were required to find beyond reasonable doubt (Record at 336). We are confident that the members followed the instructions. We are convinced beyond reasonable doubt that the injuries to Shonta were disfiguring.

The appellant seeks to have this court apply the holding of *United States v. McGhee*, 29 M.J. 840 (A.C.M.R.1989), *reversed on other grounds*, 32 M.J. 322 (C.M.A. 1991),[3] to his case. In *McGhee*, the Army Court of Military Review made a factual determination that the impact scarring on the child's back and buttocks in that case was not easily detectable to the casual observer. Applying that fact to its perception of the meaning of "disfigure", the court determined that the evidence of injuries in that case "fell beneath the threshold for maiming." 29 M.J. at 841. We need not find fault with that court's analysis to find that its holding on this issue is fact-based and is, therefore, limited in its application.

Facts more analogous to the appellant's case are found in a recent Air Force Court of Criminal Appeals case. *United States v. Spenhoff*, 41 M.J. 772 (A.F.Ct.Crim.App. 1995). Sergeant Spenhoff argued that the burns he inflicted upon his victim's buttocks, although permanent, were not disfiguring because they were on a body part usually covered by clothing. The Air Force Court held

that the law of maiming protects the integrity of the victim's body, as well as the face, citing the California case of *People v. Keenan*, 227 Cal.App.3d 26, 277 Cal.Rptr. 687 (1991).

*Keenan* was convicted of mayhem[4] for burning the breasts of his victim with a lit cigarette. He argued that this did not constitute disfigurement because the scars were small and they were on a part of the body that is normally covered. The court reasoned that exposure of the scars to public view is not a defining aspect of the offense. More significant was the heinous nature of the invasion of the body's integrity. It affirmed the appellant's conviction of mayhem.

 The evidence in this case establishes that Shonta's scars at the time of trial were clearly visible and substantially permanent in nature. Should they become less visible with the passage of time, or should Shonta choose to dress in a manner as to conceal them from view of the casual observer, their existence is no less a reality. The disfigurement aspect of maiming is defined by the effects of the injuries upon the body of the victim. MCM, Part IV, ¶ 50. It is not defined by localized or ephemeral fads of fashion which may suggest exposing to the view of the casual observer different parts of the body at different times in different circumstances. Nor is it defined by lifestyle choices made by the victim. The offense is complete whether Shonta should aspire to become an artist's model or a cloistered nun.

We have considered the testimony relating to the nature of Shonta's injuries. We have examined the photographs of her injuries. We are convinced beyond reasonable doubt that the scars are clearly visible to a casual observer, they detract from Shonta's comeli-

---

3. Specialist McGhee was convicted of maiming her 6-year old son, Anthony, and of voluntary manslaughter of her 5-year old daughter, Shanta. The Army Court affirmed the lesser included offenses of assault with a means likely to inflict grievous bodily harm as to both children. The Court of Military Appeals, ruling that the members had not been instructed on aggravated assault as a lesser included offense of voluntary manslaughter, remanded the case for a determination of whether negligent homicide was a lesser included offense and whether it was supported

by the evidence. Upon remand, the Army Court of Military Review affirmed the appellant's conviction of the lesser included offense of negligent homicide. *United States v. McGhee*, 33 M.J. 763 (A.C.M.R.1991).

4. The court noted that "mayhem" is an older form of the word "maim". It traced the common law concept of maiming as a criminal offense from the Coventry Act of 1670 to its present application in statutory law.

ness[5], and they are substantially permanent in nature. Such injuries, combined with the appellant's intent to injure, constitute maiming.

## IV.

### Evidence Of The Appellant's "Nonpeaceableness"

During an Article 39(a) session[6] the trial counsel made an offer of proof that Seaman Lisa Thomas would testify to the appellant's temperament in rebuttal to YN3 Lisa Lockett's testimony that she had never seen the appellant get upset with Shonta. Record at 206. The individual civilian counsel stated that he had no objection to this testimony. *Id.* Later SN Thomas testified without objection from the civilian counsel. Since we do not find the admission of this testimony was plain error, we need discuss it no further. Civilian counsel's failure to object waived the issue. MIL.R.EVID. 103(a)(1), (d).

When the trial counsel announced his intention to recall YN3 Lockett, civilian counsel objected on the ground of relevancy. Record at 208. The trial counsel did not make an offer of proof other than "[a]s we spoke in the 802."[7] Record at 208. The military judge overruled the objection on the basis that the testimony would "go into the defendant's specific acts of nonpeaceableness." Record at 209.

The prosecution may offer character evidence to rebut evidence offered by the defense as to character or a pertinent character trait of the accused. MIL.R.EVID. 404(a)(1).

We are unable to find in the record where the appellant's character for peaceableness had been placed in issue by the testimony of YN3 Lockett. Both the appellant and the government perceive the issue being raised in YN3 Lockett's testimony that she had never seen the appellant get upset at Shonta. Record at 127. We do not agree. Yeoman Third Class Lockett did not create evidence of the affirmative character trait of peaceableness by a bare-bones "No" response to the question: "Did you ever see Lance Corporal Outin get upset at Shonta for any reason?" *Id.*

Although this evidence was elicited from a government witness, albeit a reluctant one, it is deemed to have been introduced by the defense. The defense must assume responsibility not only for specific evidence it introduces but also for the reasonable inferences which may be drawn from such evidence. *United States v. Shields*, 20 M.J. 174 (C.M.A.1985); *United States v. Strong*, 17 M.J. 263 (C.M.A.1984). The specific evidence of YN3 Lockett's testimony was that she had never seen the appellant get upset at Shonta. It may have been reasonable to infer from this testimony that the appellant was patient with babies, that Shonta was not a troublesome baby, or even that the appellant felt a particular tenderness for Shonta. It would not have been reasonable to infer, from this very limited testimony, that the appellant was a generally peaceable person. There was no evidence in the record of the appellant's general character for peaceableness which, if it had been admitted, could have been rebutted by nonpeaceableness character evidence under MIL. R.EVID. 404(a)(1). The defense had not

---

5. comeliness: the condition of being comely especially with respect to grace or beauty of external form.
 comely 1: having a pleasing appearance: attractive through a measure of good looks, good proportions, pleasing coloration, neat or wholesome aspect: not homely or plain.... 2: generally pleasant and attractive-looking: ...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 454 (1971).
 "comely 1: Having a pleasing appearance; attractive; handsome; graceful." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 266 (1976).

"comely 1: pleasing in appearance; fair...." THE RANDOM HOUSE COLLEGE DICTIONARY 268 (1982).

6. UCMJ, art. 39(a), 10 U.S.C. § 839(a).

7. This omission emphasizes the significance of military judges ensuring compliance with Rule for Courts–Martial 802(d). A party's failure to object to noncompliance with this rule waives that party's rights as to this rule. However, as in this case, noncompliance may leave a void in the record which may hamper this court's ability to fulfill its mandate.

opened the door for evidence of "nonpeaceableness.

■ The military judge is given wide discretion in determining whether the door has been opened for admission of otherwise inadmissible evidence. *Shields,* 20 M.J. at 176. We may evaluate such a ruling only for an abuse of discretion.

■ The general tenor of YN3 Lockett's earlier testimony was that the appellant cared for Shonta and took good care of her. Evidence that the appellant had once knocked a hole in a wall during one of many arguments with his wife, does not rebut evidence that he was a loving, caring father to Shonta. The civilian counsel's objection to this evidence was improperly overruled and the evidence was erroneously admitted.

Having found error we must test for prejudice. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Armstrong,* 36 M.J. 311 (C.M.A. 1993); UCMJ art. 59(a), 10 U.S.C. § 859(a).

■ The appellant claims this evidence prejudiced him in two ways: propensity and intent. We find no basis for determining that this evidence was introduced, argued, or used to establish that the appellant was a bad person and acted in conformity with that characteristic. It was introduced and argued to show that the appellant had a temper. Record at 321. The military judge provided the members no guidance in the application of the evidence, so we cannot determine to what use, if any, the members put it. However, in light of the evidence that: (1) the injuries occurred while the child was in the exclusive custody of the appellant; (2) the nature of the injuries precluded accident; and (3) the appellant knew that immersion in the scalding liquid would injure the child, we find it highly unlikely that the members relied upon evidence as to the appellant's temper in determining that he intentionally caused Shonta's injuries. *See United States v. Moreno,* 36 M.J. 107 (C.M.A.1992); *United States v. Shepard,* 34 M.J. 583 (A.C.M.R. 1992), *aff'd,* 38 M.J. 408 (C.M.A.1993); *United States v. Newman,* 34 M.J. 1100 (A.C.M.R.1992). We find that there was proof beyond a reasonable doubt of the appellant's intent to injure Shonta, even absent the evidence of this single incident of petulance.

## V.

### Appropriateness Of A Dishonorable Discharge

We have considered the appropriateness of the appellant's sentence in its entirety. We are satisfied that inclusion of a dishonorable discharge in the appellant's sentence is appropriate.

## VI.

### Preparation Of Appellate Judges' Fitness Reports

This issue has been previously resolved adversely to the appellant's position. *United States v. Mitchell,* 39 M.J. 131 (C.M.A.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994).

## VII.

### Conclusion

Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed.

Senior Judge MOLLISON and Judge DeCICCO, concur.