# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201700308

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## KEARA GONZALEZ STARKS
Master-at-Arms Seaman Apprentice (E-2), U.S. Navy
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges: Commander William H. Weiland, JAGC, USN.
Convening Authority: Commandant, Naval District Washington,
Washington Navy Yard, D.C.
Staff Judge Advocate's Recommendation: Commander James A.
Link, JAGC, USN.
For Appellant: Commander Robert D. Evans, Jr., JAGC, USN.
For Appellee: Major Kelli A. O'Neil, USMC; Lieutenant Kimberly
Rios, JAGC, USN.

————————————

Decided 26 June 2018

————————————

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

SAYEGH, Judge:

At a general court-martial, a military judge convicted the appellant, pursuant to her pleas, of two specifications of sexual abuse of a child and one specification of obstructing justice, in violation of Articles 120b and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b and 934. The military judge sentenced the appellant to four months' confinement,

reduction to E-1, and a bad-conduct discharge (BCD). The convening authority approved the sentence as adjudged, and except for that part of the sentence extending to the BCD, ordered the sentence executed.

The appellant raises four assignments of error (AOEs): (1) the military judge considered uncharged misconduct during presentencing; (2) the appellant was subjected to unlawful post-trial punishment; (3) a sentence that includes a BCD is inappropriately severe; and (4) this court should order the return of the appellant's seized property.[1]

Having carefully considered the record of trial and the parties' submissions, we conclude the findings and sentence are correct in law and fact and find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In May 2015, the appellant was in a rollover vehicle accident. She suffered severe injuries to her body, head, and face, as well as a traumatic brain injury (TBI). At the time of her accident, the appellant was married to SS. Soon thereafter, SS decided to end her relationship with the appellant. To ease her own guilt, SS encouraged the appellant to form an intimate relationship with SS's 14-year old niece, FO, who lived in Puerto Rico.

In December 2015, FO flew to Maryland to visit SS and the appellant. During this visit, the appellant kissed FO on three separate occasions. After FO returned to Puerto Rico, the appellant exchanged sexually explicit text messages with her. In January and March of 2016, the appellant traveled to Puerto Rico where she again kissed FO. In March 2016, while still in Puerto Rico, the appellant was confronted by FO's grandfather who warned the appellant he was going to call the police and report her for stalking FO. Concerned that FO's family would see their text messages, the appellant told FO to delete all their text messages from her phone.

We will address the remaining relevant facts in the discussion.

## II. DISCUSSION

### A. Uncharged misconduct

The appellant asserts that her presentencing hearing was prejudiced by the military judge's consideration of two forms of uncharged misconduct. First, the appellant admitted during the providence inquiry that she violated

---

[1] We have considered but summarily reject AOE 4 raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

a military protective order (MPO) and attempted to persuade FO to recant her statements and not cooperate with investigators. Second, after Dr. SB, a forensic psychologist and clinical neuropsychologist, testified during the defense presentencing case about the extent of the appellant's injuries, he revealed on cross-examination that the appellant admitted that at the time of her rollover accident she was speeding and driving drunk.

When a military judge admits aggravation evidence over defense objection, we review for an abuse of discretion. *United States v. Ashby*, 68 M.J. 108, 120 (C.A.A.F. 2009) (citing *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009)). In the absence of a defense objection, we review claims of erroneous admission of evidence for plain error. *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007). Under a plain error analysis, the accused has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant. *United States v. Payne*, 73 M.J. 19, 23-24 (C.A.A.F. 2014) (citing *United States v. Tunstall*, 72 M.J. 191, 193-94 (C.A.A.F. 2013)).

1. *Providence inquiry*

The appellant pleaded guilty to one specification of obstructing justice for communicating to FO "an instruction to delete messages between them."[2] During the providence inquiry related to this charge, the military judge questioned the appellant about why she thought she was guilty of this offense. In response, the appellant first admitted, "I was telling [FO] to use a password when we talked[.]"[3] After a short colloquy on that admission, the military judge again asked, "What else did you do to obstruct justice?" The appellant replied, "I told [FO] to leave the iPad at her friend's house[.]"[4] This admission was followed with another short colloquy in which the military judge asked the appellant a third time, "What else did you do?" The appellant admitted, "I asked [FO] to delete the messages."[5] When asked when she told FO to delete their text messages, the appellant volunteered:

> After the investigation started, I was issued an MPO. And sometime in May, [FO] called me from a different phone number and I picked up the phone; and even though I knew it was her, I still stayed on the phone.[6]

---

[2] Charge Sheet.

[3] Record at 60.

[4] *Id.* at 64.

[5] *Id.* at 65.

[6] *Id.* at 67.

The military judge immediately attempted to redirect the inquiry back to the appellant's request of FO to delete their text messages. "When you picked up the phone in May of 2016 even though there was an MPO, did you tell her to delete evidence?"[7] A few questions later, the military judge again attempted to move away from the MPO. "That would be an orders violation. How is talking to her in violation of your MPO obstructing justice?"[8] In response to this question, the appellant conceded that she violated the MPO to talk to FO in the hopes of convincing FO to not testify against her.

No further discussion occurred on the record regarding the MPO or the appellant's attempts to influence FO's involvement in the case. After finding the appellant guilty pursuant to her pleas, the military judge asked the trial defense counsel (TDC) if they had any objections to consideration of the providence inquiry during sentencing. The TDC stated, "No objection."[9]

The government argues that the TDC's "[n]o objection" constitutes an affirmative waiver barring the appellant from raising any appeals based on the military judge's consideration of the providence inquiry.[10] However, we need not decide whether the issue was waived when, as in this case, we do not find plain error.

Sometimes even proper questions during a providence inquiry lead to the disclosure of uncharged misconduct. With regard to the specification for obstructing justice, the questions were relevant and directly related to the facts underlying the appellant's belief that there was or could be a criminal proceeding related to her relationship with FO. Such a belief is a required element of the charged offense under Article 134, UCMJ. Since RULE FOR COURTS-MARTIAL (R.C.M.) 1001(b)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), allows as evidence in aggravation any matters "directly relating to or resulting from the offenses of which the accused has been found guilty," we find no error in the military judge's consideration of the uncharged misconduct revealed during the providence inquiry.

Further, the appellant's voluntary admissions to other acts of obstructing justice—in violation of an MPO—occurred prior to the charged act and were part of a continuous course of conduct. "[W]hen uncharged misconduct is part of a continuous course of conduct involving similar crimes and the same

---

[7] *Id.* at 68

[8] *Id.*

[9] *Id.* at 92-93.

[10] Appellee's Brief of 17 Apr 2018 at 10 (citing *United States v. Swift*, 76 M.J. 210, 217 (C.A.A.F. 2017)).

victims, it is encompassed within the language 'directly relating to or resulting from the offenses of which the accused has been found guilty' under RCM 1001(b)(4)." *United States v. Nourse,* 55 M.J. 229, 232 (C.A.A.F. 2001). Here the appellant told FO how to use passwords, where to hide her iPad, and tried to persuade FO to not testify against her. These were all acts of obstructing justice intended to impede the same investigation and provided context to her eventual request of FO to delete their text messages.

2. *Cross examination of Dr. SB*

During presentencing, the appellant called Dr. SB, a forensic psychologist and clinical neuropsychologist, to testify about his evaluations of the appellant after her car accident. On direct examination, Dr. SB testified about the appellant's TBI, severe depression, and lack of any predatory behavior toward minors. Based on his assessment, the appellant's TBI would cause her to suffer from impulsivity or disinhibitions that affected her ability to react as she normally would to stimuli.[11]

The assistant trial counsel then cross-examined Dr. SB:

> Q. Now when you interviewed [the appellant,] you asked her about the cause of her injuries because that would be important for you to understand, right?
>
> A. Yes.
>
> Q. And she told you that it was a motor vehicle accident?
>
> A. Yes.
>
> Q. Did she tell it was a drunk driving accident?
>
> A. Yes.
>
> Q. And that she was the drunk driver?
>
> A. Yes.
>
> Q. And that she lost control and flipped her vehicle because she was speeding?
>
> A. Yes.[12]

The TDC did not object. The appellant now contends that the military judge improperly considered this testimony that was "calculated to present

---

[11] Record at 122.

[12] *Id*. at 129-30.

evidence of other crimes" and "paint the [appellant] as a bad person."[13] We disagree.

"The defense must assume responsibility not only for specific evidence it introduces but also for the reasonable inferences that may be drawn from such evidence." *United States v. Outin*, 42 M.J. 603, 608 (N-M. Ct. Crim. App. 1995) (citations omitted). R.C.M. 1001(d) permits the prosecution to rebut mitigation evidence that gives rise to certain reasonable inferences. *United States v. Oenning*, 20 M.J. 935, 936 (N.M.C.M.R. 1985). It was reasonable to infer that Dr. SB's testimony regarding the appellant's TBI was being offered as a matter in extenuation that "served to explain the circumstances surrounding the commission of [her] offense[s.]" R.C.M. 1001(c)(1)(A). Further, Dr. SB agreed that the cause of the appellant's injuries was important to his diagnosis of her. Therefore, even assuming the military judge, in fashioning an appropriate sentence, did consider evidence that the appellant was driving while intoxicated, the appellant has not demonstrated error, let alone plain or obvious error.

## B. Post-trial conditions of confinement

The appellant was sentenced to confinement for four months. The appellant alleges that the Naval Consolidated Brig in Chesapeake, Virginia restricted her from eating in the galley with the general population, "in an effort to protect her from ridicule by other prisoners."[14] The appellant argues that eating in isolation is a form of disciplinary segregation and, therefore, the brig staff illegally increased the severity of the conditions of her post-trial confinement.

This court reviews allegations of post-trial violations of the Eighth Amendment and Article 55, UCMJ, *de novo. United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001). In evaluating both constitutional and statutory allegations of cruel or unusual punishment, we apply the Supreme Court's Eighth Amendment jurisprudence "in the absence of legislative intent to create greater protections in the UCMJ." *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (citation omitted). The Eighth Amendment forbids punishment that is "'incompatible with the evolving standards of decency that mark the progress of a maturing society, or which involve the unnecessary and wanton infliction of pain.'" *Id.* at 214 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)). However, before a prisoner may petition an appellate court with a claim of cruel and unusual punishment in confinement, he or she must first seek administrative relief. *United States v.*

---

[13] Appellant's Brief of 18 Dec 2017 at 18.

[14] Clemency letter of 15 Sep 2017 at 2.

*Coffey*, 38 M.J. 290, 291 (C.M.A. 1993). An appellant must show, "absent some unusual or egregious circumstance, that [s]he has exhausted the prisoner grievance system of the [confinement facility] and that [s]he has petitioned for relief under Article 138, UCMJ, 10 USC § 938." *Id.*; *see also Lovett*, 63 M.J. at 211.

"[T]he exhaustion requirement in *Coffey* [sic] is intended to ensure that an adequate record has been developed with respect to the procedures for considering a prisoner grievance and applicable standards." *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997). The record regarding cruel and unusual punishment in this case consists only of what the TDC submitted in a post-trial clemency letter. Neither the clemency letter nor the appellant's brief contains additional evidence that the appellant ever invoked the prisoner grievance system in the facilities in which she was confined. There is no evidence that she submitted an Article 138, UCMJ, complaint or that circumstances prevented her from doing so. The record contains no other evidence or findings of fact from the military judge that the brig facility leadership was aware of the appellant's complaints or was indifferent to them. We are therefore unable to make any findings regarding the mishandling of grievance procedures, any failures to balance institutional and individual needs, or whether any conditions amounted to cruel and unusual punishment. *Id.*

The appellant's complaint falls short of the standard required for intervention by this court.

**C. Sentence appropriateness**

Although she concedes that she "committed serious crimes" the appellant argues a BCD is inappropriately severe.[15] We disagree.

We review sentence appropriateness *de novo. United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment [s]he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires our "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted). In making this assessment, we analyze the record as a whole. *Healy*, 26 M.J. at 395. Despite our significant discretion in determining sentence appropriateness, we must remain mindful that we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

---

[15] Appellant's Brief at 24.

The appellant pleaded guilty to committing lewd acts upon a 14-year-old girl and then impeding the investigation into her own misconduct. This was not a case of an isolated incident. The appellant kissed FO and sent her lewd text messages on divers occasions over a three-month period. The kissing involved open-mouthed "French kissing."[16] The texting included messages with sexually explicit language from the appellant to FO.[17] She also admitted to multiple methods in which she intentionally tried to hide the relationship from both FO's family and criminal investigators through passwords and the deletion of text messages.

The appellant presented matters in extenuation that related, in significant part, to the injuries she suffered in her roll-over accident. At the time of her trial, she was only three months into a year-long series of reconstructive surgeries to repair her head, face, and arm. She also presented evidence that she was suffering from TBI that left her with diminished impulse control. The appellant had no prior predisposition to engage in child-sex offenses, and her risk for future offenses was considered "quite low."[18] She also presented compelling testimony that her spouse encouraged her to form an intimate relationship with FO. However, she committed multiple lewd acts with a 14-year-old victim that carried a maximum punishment of 40 years' confinement and a dishonorable discharge. Balancing the seriousness of her misconduct against the evidence of her injuries and other extenuating and mitigating circumstances, a BCD is appropriate.

Having given individualized consideration to the nature and seriousness of these crimes, the appellant's record of four years of service, and all matters contained in the record of trial, to include the victim's impact statement,[19] we conclude the sentence is not inappropriately severe and is appropriate for this offender and her offenses. *United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005); *Healy*, 26 M.J. at 395-96; *Snelling*, 14 M.J. at 268. Granting sentence relief at this point would be to engage in clemency, which we decline to do. *Healy*, 26 M.J. at 395-96.

---

[16] Record at 30.

[17] *Id.* at 49.

[18] *Id.*at 125.

[19] *Id.* at 96.

## III. CONCLUSION

The findings and sentence are affirmed.

Senior Judge HUTCHISON and Judge FULTON concur.

For the Court

R.H. TROIDL
Clerk of Court